arguments not to exceed 15 minutes per side. Mr. Ballinger, you may proceed to the podium. Thank you, Your Honor. May it please the Court. My name is Scott Ballinger. I'm the Director of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce Abigail Jones and Leah Schwartz, who will be presenting argument for Mr. Riley today. Well, thank you, and thank you for the great work that your clinic does there and the contributions you make to the process. With that, we'll hear from counsel. Good morning. Good morning. With Your Honor's permission, we'd like to reserve five minutes for rebuttal. Very well. May it please the Court. Mr. Riley raised his hand and told the district court that unbeknownst to him, his attorney, Ms. Studnicki, stipulated to his resentencing without his consent. Courts have never and should never treat litigants raising their hands in this way as hybrid representation, but the district court did just that. The district court abused its discretion when it denied Mr. Riley's motion on procedural rather than substantive grounds. Mr. Riley found out through the prison mail system, not through his attorney, that he was resentenced based on a stipulation that he did not know about and did not consent to. At that time, Mr. Riley knew two things. First, that his attorney wasn't communicating with him, and second, given the circumstances, he had a very short timeframe to alert the court of this breakdown in the attorney-client relationship. So Mr. Riley did what this court has urged countless other defendants to do. He tried to raise his objections on the record. The district court should have investigated the breakdown in the attorney-client relationship, or it should have at the very least held Mr. Riley's motion in abeyance. Instead, the district court denied Mr. Riley's motion on hybrid representation grounds, and it denied it with prejudice, which triggered a very short 14-day notice of appeal deadline. And the only solution that the district court gave Mr. Riley was to talk to his attorney. The very same attorney Mr. Riley had just told the district court had stipulated to his sentence on his behalf without his consent. So I guess, I mean, I understand your point, you know, that he brings a certain fact to the district court's attention, but he does so in a motion that is not seeking any of the relief that you're saying the district court, as a matter of law, was bound to provide to him, you know, potentially changing his lawyer. He doesn't ask for a new lawyer. He doesn't ask to proceed, just, I don't know. He's asking for the court to revisit its substantive decision, and I guess, why isn't that sort of going beyond the bounds of what we would normally do, even for a pro se litigant? Yes, Your Honor. So Mr. Riley recognizes that he doesn't meet the high bar to substitute counsel or to proceed pro se, and he doesn't expect this court to lower the bar for him. What Mr. Riley was trying to do in his motion for reconsideration was to assert his rights as a client. And this court and the Supreme Court have said that there are certain rights that clients have the ultimate authority over, like whether to accept a plea deal, whether to testify in your own trial, and whether to accept an appeal. And here, a stipulation effectively ending a case was Mr. Riley attempting to assert his rights as a client. And doesn't that lead us away from this conceptual problem with it being hybrid representation? It seems to me that this is very much in line with the case that was not discussed much in briefing, the Sixth Circuit's Benitez case, which talks about once a defendant expresses serious dissatisfaction with his counsel, then the court has an obligation to ask that defendant about what the problem is. And isn't that the issue here, that there was a failure of the court to pursue that? Benitez is really clear that, and I want to make sure I get all the concepts, the defendant is not required to make an explicit request, this defendant did not, or to make his dissatisfaction with his representation known. It doesn't have to be explicit. But he does have to make a motion or something that approximates a motion to effect a change. And isn't that exactly what he did? Isn't that the analysis that we should be speaking about in this case? Yes, Your Honor, that's exactly what Mr. Riley did. And you're correct about the hybrid representation point. This court doesn't even need to reach the hybrid representation point today. It could hold like what you mentioned, Judge Schranch and Benitez, and say that regardless of whether or not this is hybrid representation, when a defendant raises concerns about a breakdown in an attorney-client relationship, the district court abuses its discretion when it fails to address those concerns. And so why should this court have construed his motion as a motion for change in representation or a problem with his existing counsel? What facts support you're fitting within the Benitez test? So Your Honor, I would point this court to two different things that would construe Mr. Riley's motion as addressing the breakdown in the attorney-client relationship. The first is in the very first line he said that he now comes before the court in his pro se litigant capacity. Although this isn't enough for him to proceed pro se, this should have set off alarm bells for the district court because they knew that Mr. Riley wanted to be represented and the district court knew that Mr. Riley asked for court-appointed counsel in the first place. And I would also direct the court to the second line in Mr. Riley's motion for reconsideration where he said that unbeknownst to him, his attorney, Ms. Studnicki, entered into a stipulation reducing his sentence without his consent. That should have been enough given the circumstances and the context where Mr. Riley had no right to be present at 3582 C2 proceeding and no subsequent and effective assistance of counsel claim to put the district court on notice of the breakdown in the attorney-client relationship. And isn't that where your argument under Liggins comes in? Yes, Your Honor, it is. And how does it fit under Liggins then? So Your Honor, Judge Clay writing in Liggins emphasized the need for a court to address the breakdown in the attorney-client relationship. In Liggins, the court wrote, the district court abused its discretion by denying Liggins permission to speak when he asked and by failing to provide any other time during the hearing for Liggins to be heard. Here, although Mr. Riley isn't making a motion to substitute counsel, he similarly is addressing a breakdown in the attorney-client relationship and the district court should have at the very least investigated or held the motion in abeyance so Mr. Riley had time to address the problem on his own. Let me ask you this. When your client says that the court did not perform the proper inquiry, so he moves for a redo here, does he have any obligation to say, to substantiate what the problem was that would have been better addressed with a different lawyer and what the probable better outcome for him would have been or is that beside the point here? I'm sorry, Your Honor, could you rephrase that? Yeah, I'm just asking as a part of his appeal here, in addition to saying that the court did not perform the proper inquiry to get at his request for different counsel, in conjunction with this motion, is your client required to say how he was prejudiced by this lack of inquiry by the district court and how the proceedings may have turned out more to his advantage had the district court made that inquiry? No, Your Honor, we do not believe that Mr. Riley would be required to say here, sorry, Your Honor, let me rephrase. Mr. Riley was prejudiced here because defendants have the ultimate authority to make certain decisions. Like this court has said in Smith v. Cook and the Supreme Court has said in cases like Florida v. Nixon and Missouri v. Frye. The way that Mr. Riley was prejudiced here was that his attorney exercised the ultimate authority that is usually left to a defendant. All right. Well, I mean, so what exactly do you think we ought to do about this? I mean, your client asked for substantive relief, setting aside his sentence, if I recall correctly. I mean, so are you asking us to vacate the court's decision as to that motion or to hold some evidentiary hearing about whether what your client said is in fact true? I mean, it's not established that this lack of consultation occurred. So I guess, I mean, what exactly is the district court supposed to do now in your view? So Your Honor, we have two asks of this court. This court could either vacate Mr. Riley's resentencing and remand for further resentencing under 3582C2, or this court could remand and ask the district court to consider Mr. Riley's motion for reconsideration on the merits. What would that mean? I mean, what does that mean in more specific terms? Like, is he still represented or, I mean, does it devolve into an inquiry about whether in fact the lawyer talked to him about the agreed upon sentence and so on? So Your Honor, Ms. Stednicki is still counsel of record if it's remanded to the district court, and I can attest to this court that we have evidence not in the record before this court that would establish the breakdown in the attorney-client ratio. All right. Well, if it's not in the record, then as far as we're concerned, it's just not, doesn't exist really. Yes, Your Honor. But Mr. Riley could present this evidence on remand to the district court if there's further resentencing proceedings or if the district court were to consider the motion for reconsideration anew. I know you're out of time, but let me ask you one final question here. If you prevail in this appeal and this matter goes back for resentencing, do you realize that it's possible that your client could wind up with a more severe sentence than he currently has? Have you addressed that, discussed that with the client, or is that a concern at all? Your Honor, what Mr. Riley was concerned about here was his ability to exercise the ultimate authority that a defendant has, and he was concerned about being able to effectively end his sentence. So Mr. Riley recognizes that that's a concern, but at the end of the day, he would like to exercise his ultimate authority as a client. All right. You'll have your rebuttal time. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, William Valancourt, appearing on behalf of the United States. The question here is whether the district court abused its discretion in denying hybrid representation. The court should affirm the district court and leave Riley to seek appropriate relief from the district court. Well, I mean, they would not agree with that phrasing of the question. They're not asking for hybrid representation. They're saying the district court had a duty to investigate, so to speak, after their client alleged in his motion that his lawyer had agreed to a particular sentence without talking to him about it first. So it's really . . . I mean, isn't it more fair to say that the question here is whether the district court had a duty to do more than just construe it as a hybrid motion, but instead had some duty to find out if this allegation was true? No. When you look at Mr. Riley's motion, it was the quintessential attempt at hybrid representation to seek substantive relief. His motion was not a diatribe against his lawyer. It merely identified that, hey, my lawyer didn't . . . I didn't consent to this. Here's why I want a greater sentence reduction than is granted. I mean, I think . . . I mean, if we're going to, you know, sort of just look at this in a, I guess, more holistic way, I mean, he's doing both. You're both right. He is asking for that relief, but he's also telling the district court about a circumstance that he says should be sufficiently alarming that the court must investigate. And the court acted appropriately in denying the motion by construing it as hybrid representation, denying it without prejudice, wasn't denied with prejudice, denied without prejudice, and directing Riley to talk to his lawyer because what was presented to the court was a factual allegation about his interaction with his lawyer that the district court did not know whether or not it was true. How does that fit with our case law? You have Benitez that says once the judge is on notice that there is a concern, it does not have to be a technically correct motion. The judge just has to be placed on notice, and then the judge has the responsibility to ask the defendant about the problem. And I guess I'm just saying that . . . think of our Isles case from 1990 that says that the trial court has a responsibility to inquire into the reasons. You don't have to begin with the reasons. The court has to ask for the reasons for the defendant's dissatisfaction. And if you follow up with our 2017 United States v. Powell, we just clearly say once a defendant brings any serious dissatisfaction with counsel to the attention of the district court, the court has an obligation to inquire. Didn't the court fail to satisfy its obligation? No because first of all, there was a factual issue as to whether or not there was any kind of a breakdown because . . . But that's the issue. That's the thing that places the burden on the district judge to make the inquiry, isn't it? Every pro se filing would trigger that in your Honor's view then because every pro se filing is either raising an issue that counsel chose not to raise or maybe they didn't discuss. And so then construing the standard to be that broad would require district courts to become involved in every time there is some kind of a difference in opinion over how a district court should be. And here, if this was so serious, Riley could have asked for substitution of counsel. He could have asked to represent himself, but he didn't do it. And Riley knew how to ask for a lawyer. That's how this whole process got started is he filed a letter with the court saying, hey, I want a sentence reduction. I'd like the appointment of counsel. So I guess I'm concerned about the concept that the judge doesn't have the duty to ask. It's not, to me and to our case law, it doesn't seem to be embroiling yourself within a dispute. The simple question is, are you asking this court to be a pro se representative of your own case instead of your counsel or are you asking for new counsel? A simple question. The standards are clear that if you want to represent yourself, you have to make it clear and equivocal and if you want new counsel, you have to at least ask. He didn't even ask for new counsel. He merely said, counsel didn't ask for this, but I am and I want you to consider it. That's a substantive request for relief that the court considered and actually Riley, the relief Riley was seeking was relief the district court couldn't even have granted because Riley was asking that his sentence be cut below the sentencing guidelines. He wanted a sentence time served and the court would not have been able to do that because under the guidelines, the only reduction you can give on a sentence modification... I guess though, my problem is we don't get there. We don't get there until the court addresses the representation problem, do we? Well, and I think the court addressed it by telling Riley to talk to his lawyer because there could be a number of alternatives. Either there was a misunderstanding, maybe Riley misunderstood his lawyer or was confused, maybe there was a misunderstanding, maybe his lawyer made a mistake, or maybe Riley was engaged in gamesmanship and had really consented to it. So instead of delving into, intruding into the attorney-client relationship, the court told Riley, you talk to your lawyer and then you can seek relief. A number of things would have happened had Riley done that. Either the counsel and Riley would have resolved what issue they had, they would have determined that there was in fact a breakdown in the relationship, in which case counsel would have filed a motion. What does the fact that there was actually a motion filed relate to our cases, Benitez's suggestion that a defendant's failure to explicitly request a new attorney does not negate the conclusion that his statements were sufficient to trigger the district court's obligation to inquire into his dissatisfaction? That's going to exist with every hybrid filing. Well then, is Benitez wrong? Is Iles wrong? You talk about Benitez and serious dissatisfaction. Simply identifying a disagreement doesn't necessarily constitute a serious dissatisfaction that triggers an independent inquiry by the judge. This is more than just a disagreement about whether he should have made a certain legal argument or something. Isn't this flagging a potential breach of the attorney's ethical duty toward his client? Well, and that's why the district... Is that, let's just answer that question, is that a fair characterization, a potential breach of his ethical duty? Potential, which... So why isn't there a duty then to investigate? Well what the court did is told Riley, talk to his lawyer, and then the lawyer could file a motion if there was a breakdown. Okay, let me give you just a hypothetical, okay? It's not our case, alright? Let's say a defendant in Riley's position files a similar motion after sentencing with the court and says, I have learned, and this is in Detroit, I have learned that my lawyer accepted an AUSA position with the Detroit U.S. Attorney Office a month before my sentencing, and I feel that his representation of me in this matter was compromised and my sentence should be vacated. Is the court entitled at that point to say, well you're asking for a hybrid representation here, you're trying to represent yourself, go talk to your lawyer, or must the court investigate that potential breach of duty further? There'd be a range of options for the court, and in that circumstance, that would be something where the government would have responded as well, had that motion been made. If the court responded simply by saying, this motion amounts to hybrid representation denied, and that's it, is that an abuse of the court's discretion, that hypothetical? I would think not, because it hasn't foreclosed there being relief, I mean ultimately... You're talking about a pro se guy who's in prison, and you're denying his motion, I mean aren't we de facto foreclosing relief if the court just denies it and that's the end of it? No, because presumably counsel, well both counsel would be aware of the circumstance and would have the filing and could then take further action. Is it unreasonable for the judge, when presented with evidence, or at least an allegation of a breach of ethical duty, which is a higher bar than the things that are usually in pro se motions, is it that unreasonable to say that the court has some duty of investigation at that point and cannot just simply deny it because he's also seeking substantive relief? The issue is that district courts every day are faced with pro se filings that raise allegations against their lawyer, probation officers, courts, prosecutors, and the question is, do you want district courts to then be required to respond and manage each of those allegations? I mean the collateral litigation, I mean... That is the concern. And so the question is, where do you draw the line? They're magic words, you know. I mean here, given the circumstance, it was fairly easy for Riley to have talked to his lawyer to say, hey this is the problem, I didn't agree to this, the lawyer could have done something, but instead Riley cut off those avenues of relief by filing his notice of appeal. Had he talked to his lawyer and they figured out either there was a miscommunication or the lawyer explained, well you've got a stipulation to a reduced sentence, do you really want to give up the reduced sentence and maybe try to get more? There are a lot of different things that could have happened and by directing Riley to consult with his lawyer, that was the best way to, or one of, a good way to approach it. It may not have been the way Your Honor might have chosen, but that's a function of the abuse of discretion standard in that every judge might do something different that doesn't necessarily mean what the court did here was an abuse of discretion. So the first step here, simply saying, talk to your lawyer, that might easily have resolved it. If it didn't, then additional steps could have been taken and the court could have intervened. But at least at this stage where he's, the lawyer's, or Riley's just saying, hey I didn't agree to this, lawyer and Riley could have worked out their differences or identified that they had a difference and the court would have been able to intervene at that point. But you know, to restate the issue, the defendant here is claiming that his lawyer and the government arrived at a stipulated sentence without his knowledge and agreement, which is a pretty serious allegation. Seemingly it would have been a fairly simple matter for the judge to have made an inquiry about that. I mean all this that he's got to talk to his lawyer and he thinks his lawyer has betrayed him anyway and all that, and then there may have been a dispute as to what was said as between him and his lawyer in the subsequent conversation. All that could have been circumvented seemingly if the judge had just made a simple inquiry and gotten to the bottom of it. All this other approach just seems beside the point. Well that would have been one way the court could have handled it, again, but you can't just view this issue in isolation. This is the kind of an issue that comes up in every case. A defendant says, hey I've been provided my discovery, I wanted my lawyer to file a motion to suppress, I wanted my lawyer to interview these witnesses. And judges routinely don't intervene in those circumstances. They say you talk to your lawyer and if there's an issue, if their lawyer identifies that there's a breakdown, then they file a motion. Well I don't know about that, there's an entire inquiry that takes place in court when a defendant pleads guilty and the judge has to engage in a colloquy to ascertain whether the defendant knows what he's doing and understands the ramification. And the judge has to do that even when the individual is represented by counsel. So I mean, saying that the judge doesn't have to do one thing or the other, I think that's a bit overstating the judge's duties and responsibilities as a part of the entire sentencing process. That's a different situation as opposed to here where then you'd have district judges being involved in the minutiae of the day-to-day litigation and issues and disagreements and disputes that arise between a lawyer and his client. I agree that that's a fair concern. What concerns me on this is that there's an actual motion here that comports with Isles and Benitez and Powell and that it presents to this judge a quite serious issue. So if we're talking about when does the judge have to intervene, doesn't the nature of the notice that he's put on make a difference? This begins with February 5, 24, unbeknownst to me, defense counsel entered an agreement, a joint stipulation with the AUSA, that the court reduce my sentence in this way without me agreeing to that reduction. On February 6, this court accepted that stipulation and reduced my sentence without explanation. Why doesn't that, on the continuum of complete minutiae, quit wasting my time all the way to a serious charge against the attorney representing a client? If we want to look at it in continuum, why isn't this the continuum that says this is a serious charge? I have to ask this defendant if he is seeking pro se or if he is seeking a new counsel. Because the case law requires that if a defendant wants self-representation, he has to make a clear and unequivocal assertion of it. Not under Benitez. Benitez puts that burden on the district court if the district court has been made aware of dissatisfaction. But not to engage in self-representation, that's a different test. And here, the court acted in a way that if there was a dispute or a breakdown, it could ultimately get to his attention. But because the facts were not known, it was unclear that there was a breakdown as opposed to either a misunderstanding or Riley engaged in gamesomanship. The district court's choice of telling Riley to talk to his lawyer and then we'll see where we go from here. That was not an abuse of discretion. And I see my time is up. Yes, it's been up for a while, so we thank you for your argument. I'd ask you to affirm the district court and remand the district court to grant whatever relief that Riley may seek at that point. Thank you, sir. We'll hear rebuttal. May it please the court, Leah Schwartz for Mr. Riley. I'd like to respond to a couple of the government's points, starting with the administrability concern because I realize that's one of the biggest issues here. I mean, you know, are there going to be magic words now where a district court has to shut everything down, you know, if a pro se person says whatever? Yes, Your Honor. We think that this could actually be narrowed to a very limited set of circumstances that revolves around the limited list of issues that the Supreme Court pointed out in a case like Florida v. Nixon, where it listed not exclusively, but in a limited way, the issues that are fully reserved to a defendant's control, such as whether or not to take a plea deal, such as whether or not to waive a jury trial, and a lot of those pertain to the defendant's ability to make a final decision about the objectives of their representation. And we think a final stipulation to a sentence in Mr. Riley's case fits into the kind of instance in Missouri v. Fry that that court contemplated for defendants. This is something that was entirely within Mr. Riley's control. It was a final result in the case. He had very little time to decide about it. And we think that those issues are easy enough to sort of contain and make sure that there's not a large set of collateral litigation that would come from an instance like this. In addition, I would like to talk about the speculation that the government undertakes about what else might have happened here. Because we think that Mr. Riley was relatively clear in that he did not know that the stipulation came up, unbeknownst to me. And instead of presuming the dishonesty of Mr. Riley and other defendants like him, we think instead it's important to follow what the Supreme Court said in Feretta, that the respect for the individual is the lifeblood of the law, understand that Mr. Riley was in a very, very difficult position where his attorney hadn't spoken to him. He was facing a very short appeals clock. And rather than try to get in touch with an attorney who had never talked to him, he did the one thing that this court asked the defendant in Carson to do, which is to object on the record and say that he had an issue with his attorney. And I think in relation to that, it's important to remember that Mr. Riley, he wasn't asking to proceed pro se and just represent himself in this. He really wanted an attorney, which is clear from the fact that he asked this court and the district court for an attorney multiple times. He might have even wanted this attorney. What he was asking for in this situation was for the district court to hear that his attorney hadn't spoken to him so that he might get his objectives in his representation actually validated in this situation. I also think it's kind of helpful when we're thinking about the remedy that the government says the district court did properly about asking him to talk to his attorney. I think a helpful analogy here is to think about the ineffective assistance of counsel claim on habeas, where that claim, even though Mr. Riley didn't have that claim in this court, it's presumptively preserved on appeal because of how illogical it is to imagine that an attorney who has made an error will bring that error again in the district court against themselves. And so it doesn't make sense for the remedy here to be to ask Mr. Riley to talk to an that he had for an appeal rather than to just ask this district court on the record for help to hold the motion in abeyance until they could have some clarity on what actually happened here with Ms. Studnicki. So what is the hands-on remedy that you would request? Absolutely. The remedy that we would request is for the district court for this to be remanded to the district court to vacate the denial of the motion for reconsideration with instructions for the district court to inquire about the breakdown in communication between Mr. Riley and his attorney to see if there's evidence about what happened here and whether Mr. Riley actually had no idea about what happened with his defense. In addition, I think that we haven't talked about this court's decision in Carson yet, and I know we've talked about Benitez a bit, but I think that Carson is one of the best cases for Mr. Riley. I think that it's really important to think about the fact that that case made clear that Mr. Riley's objection had to be not just in some vague way, not during trial, not through just any sort of form, but on the record to ask for some sort of relief from the court, and that's exactly what Mr. Riley did. So to fault him for doing it would be to fault him for doing what the Carson court faulted the defendant for not doing, and I think that puts Mr. Riley in a very difficult position. Also, one more time, I think it's just important ... Actually, I see my time is up, so ... It's yellow, so go for it. I just think one more time I would ask this court to think about this for Mr. Riley's position. He's in prison. His attorney never speaks to him, unbeknownst to me. He has no idea what's happened with this resentencing, and he finds out through the prison mail system that he has been sentenced to a prison term from an attorney. He never spoke to who wrote his name on the stipulation and said it was coming from him, and he did the only thing he thought he could do in this situation, so thank you. Very good. All right. Thank you very much, and I think we have two new advocates who are going to equip themselves very well in the future. The case is submitted.